# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | | |
|---|---|---|
| **MICHAEL MACK** | * | **DOCKET NO.  07-0006** |
| | | **SEC. P** |
| **VERSUS** | * | **JUDGE WALTER** |
| **BURL CAIN, WARDEN** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus,* 28 U.S.C. §2254, filed on or about January 3, 2007, by *pro se* petitioner, Michael Mack. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary where he is serving consecutive sentences of life and 49 and ½ years, imposed following his 2002 convictions for second degree murder and attempted second degree murder in the Third Judicial District Court for the Parish of Lincoln, State of Louisiana.  The matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.  For reasons stated below, it is recommended that the petition be **DENIED** and **DISMISSED** with prejudice.

***Statement of the Case***

On May 23, 2002, a jury in the 3rd Judicial District Court for the Parish of Lincoln, State of Louisiana found Michael Larue Mack guilty of second degree murder and attempted second degree murder.  (*See*, R. 424, 1524-1525).[1]  On May 30, 2002, Mack's trial counsel, Mr. Bobby

---

[1]  The state court record is manually attached to the state's memorandum in this matter [doc. # 21].  The state court record will be referred to as "R.," together with the appropriate bates-numbered page(s).

Details of the crimes are set forth in *State of Louisiana v. Mack*, 850 So.2d 1035 (La.

Culpepper, filed a motion for new trial and a motion for post-verdict judgment of acquittal.  (R.

434-441).  Following a hearing, the trial court denied the motions that same day.  (R. 1529-

1537).  On June 7, 2002, the court sentenced Mack to consecutive sentences of life and 49 and ½

years without benefit of probation, parole, or suspension of sentence.  (R. 1538-1548).  The court

denied counsel's oral motion to reconsider sentence, and entered judgment.  *Id*.  Counsel then

moved orally for an appeal.  *Id*. On August 2, 2002, the trial court signed an order appointing the

Louisiana Appellate Project to represent Mack on appeal.  (R. 462).  The Louisiana Appellate

Project assigned Mr. James Beal to represent Mack.  (R. 465).[2]

On January 16, 2003, Mack, via Beal, filed his brief with the Louisiana Court of Appeal

for the Second Circuit.  (R. 1556-1570).  He raised three assignments of error: (1) sufficiency of

the evidence; (2) the prosecutor made improper references to petitioner's Muslim name during

trial and closing arguments which prejudiced the defendant in the wake of the September 11,

2001, terrorist attacks; and (3) excessiveness of sentence.  *Id*.[3]  On March 18, 2003, Mack

submitted a supplemental brief *pro se* raising two additional Assignments of Error – the denial of

his right to a speedy trial and whether the delay violated due process of law.  (R. 1595-1610).  On

---

App. 2d Cir. 2003).

[2]  Mr. Beal formally enrolled on August 23, 2002.  (R. 467-469).

[3]  In Assignment of Error No. 1, petitioner attacked the accuracy of the eye-witness testimony offered to establish that he was the perpetrator of the crime. Counsel cited no federal law in support of his argument and instead cited only one Louisiana court of appeals case, *State v. Williams*, 828 So.2d 180 (La. App. 2d Cir. 2002).  In Assignment of Error No. 2, Mack cited no federal law in support of the claim and instead relied upon La. C.Cr.P. Art. 771. In Assignment of Error No. 3, Mack argued only that his sentence amounted to cruel and unusual punishment under the provisions of Article 1, §20 of the Louisiana Constitution and La. C.Cr.P. art. 883 as interpreted by *State v. Dorthey*, 623 So.2d 1276 (La. 1993) and *State v. Bradford,* 691 So.2d 864 (La. App. 2d Cir. 1997).

2

June 27, 2003 the Second Circuit affirmed Mack's conviction and sentence.  (R. 1618-1639, 1688-1713);  *State of Louisiana v. Mack*, 850 So.2d 1035 (La. App. 2d Cir. 2003).

On July 28, 2003, Mack, now represented  by Mr. Philip O'Neil, filed an application for writs of certiorari, prohibition, and mandamus with the Louisiana Supreme Court.  (R. 1640-1662).  Counsel raised five Assignments of Error: (1) defendant was denied his constitutional right to a speedy trial; (2) defendant was denied due process of law; (3) insufficiency of the evidence; (4) improper and prejudicial remarks; and (5) excessiveness of sentence.  *Id.*  The supreme court denied writs on January 16, 2004.  (R. 1714); *State of Louisiana v. Mack*, 864 So.2d 628 (La. 2004).  Mack did not seek further direct review in the United States Supreme Court.

On or about November 19, 2004, Mack filed a *pro se* "Uniform Application for Post-Conviction Relief" in the Third Judicial District Court for the Parish of Lincoln.  (R. 548-564). He raised five claims for relief: (1) the indictment was not brought in open court by the Grand Jury in violation of petitioner's rights as guaranteed by the Fourteenth Amendment to the United States Constitution and Article 1, Section 2 of the Louisiana Constitution; (2) trial counsel was ineffective for failing to file a motion to suppress the identification of witnesses, Tim Rhone and Glenn Patrick, because their identification of Mack violated petitioner's Fourteenth Amendment rights; (3) the trial court erred in denying his motion to relieve Mr. Bobby Culpepper as his attorney in violation of petitioner's Sixth Amendment rights; (4) the trial court violated Mack's due process rights under the Fourteenth Amendment by giving a jury charge on circumstantial evidence (and Mack's attorney rendered ineffective assistance of counsel when he failed to object to same); and (5) the trial court denied Mack's due process rights by failing to instruct the jury on

3

the issue of reasonable doubt (and trial counsel was ineffective for failing to object to same).  *Id.*

The trial court denied Mack's motion in successive rulings dated April 7 and October 3, 2005.  (R. 628-629, 647-48).  Mack filed a writ application with the Louisiana Second Circuit Court of Appeal, but the court denied relief in an unpublished order on December 8, 2005.  *State of Louisiana v. Mack*, Docket Number 40938-KH (La. App. 2d Cir. 12/8/2005); (R. 1721-1722). The court addressed each of petitioner's claims as follows:

Claim One: The applicant has failed to show that he is entitled to relief since there is no requirement that the grand jurors be in court when the indictment is filed. See *State v. Scruggs*, 165 La. 842, 116 So.2d 206 (La. 1928). The only requirement is that a grand jury's decision to indict is reduced to writing, signed by the foreperson and filed in open court.

Claim Two: The trial court correctly denied this claim regarding the failure of the applicant's counsel to move to suppress the photographic line ups and in-court identifications. A review of the writ record and ths court's opinion in *State v. Mack*, 37,174 (La. App. 2d Cir. 6/27/03), 850 So.2d 1035, *writ denied*, 2003-2122 (La. 1/16/2004), 864 So.2d 628, reveals that this claim is repetitive because it was fully addressed on appeal. See La. C.Cr.P. art. 930.4(A).

Claim Three: The trial court did not err in denying this claim since it is within a judge's wide discretion not to allow a defendant to be relieved of his counsel on the day of trial. Based on the record presented, the applicant did not show how the trial court's decision prejudiced his defense. See *State v. Leggett*, 363 So.2d 434 (La. 1978).

Claims Four and Five: In denying these claims, the trial court stated in its ruling that the record shows the 'jury charge contains the exact language which petitioner alleges should have been included.' The applicant has not provided a copy of the jury charge and thus has failed to show that his defense counsel committed any error in not filing a motion to have the language in the jury charge changed.

On this writ record, the applicant has failed to meet his burden of proving that post-conviction relief should have been granted and, thus, all claims are denied. La. C.Cr.P. art. 930.2; *State v. Berry*, 430 So.2d 1005 (La. 1983). *State of Louisiana v. Michael Larue Mack*, No. 40938-KH (La. App. 2 Cir. 12/8/2005)(unpublished).

4

*Id.*

On May 25, 2006, Mack (via Wilbert Robertson, Inmate Counsel Substitute) filed an Application for Supervisory Writs of Certiorari or (Review) with the Louisiana Supreme Court.  (R. 1770-1785).  However, the supreme court denied writs on December 15, 2006.  *State ex rel. Michael Mack v. State of Louisiana*, 944 So.2d 1281 (La. 2006); (R. 1714).

On January 3, 2007, Mack filed the instant *pro se* petition under 28 U.S.C. § 2254 for writ of  *habeas corpus*.  Petitioner raised six claims for relief: (1) violation of petitioner's constitutional right to a speedy trial; (2) denial of due process because ". . . petitioner was held two years after being arraigned for a fugitive warrant based on the affidavit for the charges he was later convicted of without being indicted. The state showed a lack of due diligence in securing petitioner's presence for trial . . .;" (3) insufficiency of evidence (witnesses gave different accounts of the crime and perpetrator); (4) the District Attorney made improper remarks to the jury when he referred to petitioner by his Muslim name; (5) counsel was ineffective for failing to file a motion to suppress identification; and, (6) the trial court erred when it denied petitioner's motion to relieve one attorney and hire another.

On February 26, 2007, the undersigned recommended that the petition be denied and dismissed as time-barred.  (February 26, 2007, Report and Recommendation).  However, petitioner filed an objection wherein he adduced evidence that his habeas petition was timely. [doc. # 6].  Accordingly, the report and recommendation was withdrawn.  (April 2, 2007, Order). On May 17, 2007, the court directed petitioner to amend his complaint to set forth requisite dates and information, and on June 11, 2007, petitioner so complied.  (May 17, 2007, Memorandum Order; June 11, 2007, Amend. Compl., [doc. # 9]).  On August 3, 2007, the undersigned

completed the initial review and directed service of process on the respondent.  (August 3, 2007, Memorandum Order, [doc. 10].  Respondent filed an answer, a memorandum, and the state court record on November 19, 2007.  [doc. #s 20-21].  Petitioner filed a reply brief on December 27, 2007.  [doc. # 22].  The matter is now before the court.

**LAW AND ANALYSIS**

### I.      Exhaustion and Timeliness

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must exhaust his claims in state court before presenting them to a federal court for review.  *See* 28 U.S.C. § 2254(b)(1)(A).  With the potential exception of Claim Four, Respondent concedes (Doc. # 12, pgs. 8-9), and the undersigned finds, that petitioner exhausted his claims in state court before presenting them here.

### II.     Standard of Review

The scope of this court's review is governed by the AEDPA.  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Courts are to review "both pure questions of law and mixed questions of law and fact under § 2254(d)(1)."  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  Courts review questions of fact under § 2254(d)(2).  *Id.*

### A. § 2254(d)(1)

Under § 2254(d)(1), a state-court decision can be overturned if it satisfies one of two conditions.  First, it can be overturned if it "is contrary to [the Supreme] Court's clearly established precedent."  *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166 (2003).  A decision is contrary to precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a

decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1432 (2005).

Second, a state-court decision can be overturned under § 2254(d)(1) if it is an "unreasonable application" of clearly established Supreme Court precedent. *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527 (2003).  An "unreasonable application" occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case." *Wiggins*, 539 U.S. at 520. "[T]he state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." *Id.* at 520-21.

### B. § 2254(d)(2)

A decision can be overturned under § 2254(d)(2) if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Williams v. Taylor*, 529 U.S. 362, 386, 120 S.Ct. 1495 (2000).

### III.    Due Process and Sixth Amendment Right to Speedy Trial

In his first two assignments of error, petitioner contends that he was denied his Sixth Amendment right to a speedy trial and/or that his due process rights were violated when he was held for two years on a fugitive arrest warrant before being indicted.  These grounds for relief present mixed questions of law and fact, and thus the court analyzes these issues under the standards of § 2254(d)(1).  The state court of appeal set forth the following relevant chronology in its decision,

[a]lthough warrants for defendant's arrest were issued on July 16, 1998,[4]

---

[4]  The murder and attempted murder were committed on July 15, 1998.

7

defendant was not indicted until December 28, 2000. On September 4, 1998, the FBI issued a warrant for flight to avoid prosecution after being notified by Lincoln Parish authorities that defendant's vehicle had been found abandoned in New Orleans. On November 10, 1998, defendant was located in Canada and arrested for illegal entry into that country. He was deported and held in New York. Lincoln Parish authorities were preparing to file to have defendant returned to Lincoln Parish when he was extradited to Jefferson Parish on January 21, 1999. The Lincoln Parish authorities requested that Jefferson Parish place a hold on defendant on that date.

Defendant was held in Jefferson Parish in connection with two charges and remained in jail. Trial of the first charge was held in November 1999; defendant was acquitted of that charge. On October 30, 2000, defendant pled guilty to the second charge and was sent to Winn Parish Correctional Center.

Defendant was then indicted by a Lincoln Parish grand jury on December 6, 2000, and brought to that parish on December 28, 2000, at which time he was arrested and arraigned. Trial was set for March 19, 2001.

It was discovered that defendant had filed a pro se motion for speedy trial under La. C. Cr. P. art. 701 on August 8, 2000, prior to his indictment in Lincoln Parish. The defense sought to continue the trial so that this motion and a motion to quash which was filed by counsel on January 24, 2001, could be heard on May 7, 2001. A hearing was held on May 7, 2001; at that time, the defense again sought a continuance because one of its witnesses was not present. The motions were subsequently heard on July 5, 2001, and defendant's pro se motion for speedy trial was granted on July 11, 2001. The motion to quash the indictment for failure to timely prosecute, however, was denied that same day. As noted in the minute entries, defendant sought two further continuances of the trial, one on July 12, 2001, and one on October 15, 2001. Trial in this matter began on May 21, 2002.

*Mack*, 850 So.2d at 1046.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U. S. Const. amend. VI.[5] However, the Sixth Amendment does not come into play until a defendant becomes an "accused." *U.S. v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459 (1971). The speedy trial protections of the Sixth

---

[5] By virtue of the Fourteenth Amendment, the Sixth Amendment right to a speedy trial is enforceable against the states. *Smith v. Hooey*, 393 U.S. 374, 375, 89 S.Ct. 575, 575 (1969) (citing *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988 (1966)).

8

Amendment are activated only after a formal indictment or information or when the defendant is subjected to the "actual restraints imposed by arrest and holding to answer a criminal charge." *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303 (1975).  The basis for a defendant's arrest is critical for  determining when the right to a speedy trial attaches.  *Gravitt v. United States*, 523 F.2d 1211, 1215, n6 (5th Cir. 1975) (citing *United States v. Cabral*, 475 F.2d 715 (1st Cir. 1973)).

Before a putative defendant becomes an "accused," his primary protection against excessive government delay is the relevant statute of limitations.  *United States v. McGough*, 510 F.2d 598, 604 (5th Cir. 1975).  However, during the pre-accusation period, the Due Process Clause of the Fifth Amendment protects against oppressive delay that prejudices an accused's right to a fair trial.  *United States v. Townley*, 665 F.2d 579, 581 (5th Cir. 1982) (citation omitted).[6]

Petitioner contends that his arrest in New York on a fugitive arrest warrant triggered his Sixth Amendment right to a speedy trial.  The record reveals that on December 31, 1998, the Supreme Court for the County of Erie, State of New York arraigned Mack "on a fugitive warrant from the State of Louisiana for Murder in the Second Degree."  (R. 91).  The "Timeline" stipulated by the parties in the proceedings below indicates that Lincoln Parish issued the fugitive warrant.  (R. 64, 208).  It is unclear whether petitioner was arrested in New York on a state warrant or a federal fugitive warrant obtained by the FBI.  What is clear, however, is that on January 11, 1999, Mack waived extradition to Louisiana to face the murder charges in Lincoln Parish, but then four days later, he waived extradition to Louisiana to face robbery charges in

---

[6]  The Due Process Clause of the Fourteenth Amendment applies to pre-accusation delays caused by state prosecutors.  *See, Dickerson v. State of La.*,  816 F.2d 220, 228 (5th Cir. 1987).

Jefferson Parish.  (R. 90-101).  On January 21, 1999, Mack was extradited to Jefferson Parish, Louisiana.  At the same time, Lincoln Parish lodged a detainer against Mack in Jefferson Parish. (R. 64).[7]  It is important to note that while Mack may have been initially arrested in New York due, in no small part, to events that occurred in Lincoln Parish, he was subsequently released into the custody of Jefferson Parish officials and held on charges there from January 1999 until October 2000.  During that period, Mack arguably was not "actually restrained" in connection with the murder charges in Lincoln Parish.  *See, Cowart v. Hargett*,  16 F.3d 642, 646 (5th Cir. 1994); *see, Dickerson v. Guste*, 932 F.2d 1142, 1144 (5th Cir. 1991) (a detainer does not constitute custody for speedy trial considerations); *Gravitt, supra* (arrest for state law violations did not start the speedy trial clock for federal charges); *United States v. Green*, 508 F.3d 195, 203 (5th Cir. 2007) ("'[a] prior state arrest ..., even if based upon the same operative facts as a subsequent federal accusation, does not trigger the sixth amendment right to a speedy trial.'"); *but see*, *United States v. Avalos*, 541 F.2d 1100, 1109 (5th Cir. 1976) (right to speedy trial attached from initial arrest when the activities which formed the basis for the conviction under review were the moving force behind the warrant which led to defendant's arrest).  Regardless of when petitioner's Sixth Amendment protection attached in this case, the Louisiana Second Circuit Court of Appeal afforded petitioner the benefit of the doubt and considered the pre-indictment period in its analysis of petitioner's Sixth Amendment claim.  *Mack*, 850 So.2d at

---

[7]  Mack remained in the custody of Jefferson Parish authorities until the end of October 2000 when he was transferred to Winn Parish to serve his sentence for possession of stolen goods.

1047.[8]

In determining whether the Sixth Amendment right to a speedy trial has been violated, the courts consider "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant." *United States v. Green*, 508 F.3d 195, 202 (5th Cir. 2007) (citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972)).  As a threshold matter, the defendant must establish that the length of the delay was presumptively prejudicial.  *Id*.  When the length of the delay is greater than one year, then the court must undertake a full-fledged analysis of all four factors.  *United States v. Hernandez*, 457 F.3d 416, 420-21 (5th Cir. 2006).  When the first three factors weigh heavily in favor of defendant, then prejudice is presumed.  *United States v. Hernandez*, 457 F.3d 416 (5th Cir. 2006).

Applying the *Barker* factors, the Louisiana Second Circuit Court of Appeal noted that the length of time that it took the state to file the indictment and to bring Mack to trial was fairly long, but attributed the delay to defendant's flight to Canada and the pending charges in Jefferson Parish.  *Mack*, 850 So.2d at 1048.  The court observed that Mack asserted his Sixth Amendment

---

[8] In its decision, the court of appeal considered petitioner's right to a speedy trial under state law and the U.S. Constitution.  *Id*.  For purposes of its *state law* analysis, the court determined that the state did not initiate prosecution of the instant charges against Mack until the date of the indictment, December 2000.  *Id*.  Of course, the state court's interpretation of state law cannot be reviewed by federal habeas courts.  *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

Insofar as petitioner challenges the less than six month delay between the commission of the underlying offenses in Lincoln Parish and his arrest in New York, he has not established that the pre-accusation delay resulted in substantial prejudice to his right to a fair trial or that the prosecution engineered the delay to gain tactical advantage.  *See*, *United States v. Walker*, 710 F.2d 1062, 1069 (5th Cir. 1983).  Indeed, Lincoln Parish authorities did not ascertain petitioner's whereabouts until November 1998, when he was arrested in Canada for unlawful entry.  (*See*, R. 210-211).  Petitioner was promptly arrested in New York after Canada deported him to the United States and thereafter extradited to Jefferson Parish, Louisiana.

11

right when he filed a motion for speedy trial and his counsel filed a motion to quash the

indictment.  *Id*.[9]  However, the court noted that defendant filed several motions to continue the

trial after the trial date had been set.  *Id*.; *see also, United States v. Frye*, 489 F.3d 201, 212 (5th

Cir. 2007) cert. denied by *Frye v. United States*,____ S.Ct. ___, 2008 WL 59773 (01/07/2008)

(defendant's four motions for continuance did not demonstrate aggressive pursuit of a speedy

trial).  The undersigned further emphasizes that the delay occasioned by the pendency of the

Jefferson Parish charges would potentially not have occurred in the first place had petitioner not

waived extradition to Louisiana to face the Jefferson Parish charges.[10]

At the hearing before the trial court judge to address petitioner's motions for a speedy

trial and to quash the indictment, the only evidence adduced for the delay by Lincoln Parish in

indicting and prosecuting petitioner was because of petitioner's incarceration in Jefferson Parish

while he awaited disposition of pending charges there.  (R. 206-244).  Petitioner argues that

Lincoln Parish authorities purposely orchestrated the delay so that his alibi witnesses would

become unavailable.  However, there is no evidence to support this alleged motive.[11]  In sum, the

---

[9]  The Fifth Circuit has suggested that a motion to quash an indictment is not a valid demand for a speedy trial.  *Cowart, supra*.  If so, then petitioner made no more demands for a speedy trial once he was transferred to the custody of Lincoln Parish.

[10]  Jefferson Parish authorities were seemingly reluctant to take petitioner into custody from New York without a specific waiver on that basis.  (R. 98-99).
    Petitioner argues that he first asserted his right to a speedy trial when he "demanded" to be extradited to Lincoln Parish to face charges there.  The record of the hearing, however, reveals no such demand.  (R. 90-96).  Rather, petitioner merely waived his right to contest extradition.  Moreover, after waiving extradition to Lincoln Parish, petitioner waived extradition to Jefferson Parish a few days later, thus in effect superceding his prior waiver.

[11]  Deliberate and intentional delays by the prosecution for purpose of gaining a tactical advantage are weighed heavily against the state.  *Cowart, supra*.  "An unintentional and inadvertent delay, however, is weighed much less heavily. Where the state advances valid

first three *Barker* factors do not weigh heavily in favor of petitioner.

The fourth *Barker* factor contemplates three types of potential prejudice:  "(1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation and (3) to limit the possibilities that long delay will impair the ability of an accused to defend himself."  *Smith v. Hooey*, 393 U.S. 374, 377-378, 89 S.Ct. 575, 577 (1969) (citation omitted).  The potential impairment to a defendant's ability to prepare his case presents the most serious form of prejudice.  *United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007) (citing *Barker, supra*).  Moreover, anxiety about one's reputation and private life during pretrial delay does not alone suffice to warrant a reversal of a conviction, and "[i]ncarceration on other charges or convictions pending trial also does not constitute prejudice for *Barker* purposes."  *Cowart, supra* (citations omitted).[12]

The Louisiana Second Circuit Court of Appeal acknowledged petitioner's argument that one of his alibi witnesses died in 2000, and that another witness had moved from the area and was unavailable to testify at trial.  *Mack, supra*.  The court nonetheless discounted the alleged

_____

reasons for the delay, or the delay is attributable to acts of the defendant, this factor is weighed in favor of the state."  *Id*. (citation omitted).

[12]  *See also, Frye, supra* (no prejudice from pretrial incarceration where defendant was ultimately sentenced to life in prison without possibility of release).
Petitioner argues that the detainer levied by Lincoln Parish authorities prevented him from posting bond on his Jefferson Parish stolen property charge so that he could locate the possessor of the property at issue.  However, there is no evidence that petitioner posted bond in Jefferson Parish.  If he had done so, then he would have been taken into custody on the Lincoln Parish charges.  Petitioner further alleges that he pled guilty to the possession of stolen good charge in Jefferson Parish so that he could face the charges in Lincoln Parish.  Of course, after pleading guilty in Jefferson Parish, petitioner was not released, he was transferred to Winn Parish to serve his sentence on the stolen good charge.  Petitioner certainly had other less drastic remedies to compel resolution of the Lincoln Parish charges.  He cannot establish prejudice via circumstances that he created.

prejudice because the presumed testimony from the deceased  witness would not have precluded defendant from committing the crimes.  *Id.*[13]  The court of appeal was well within reason to discount the alleged prejudicial effect of the lost alibi witness testimony.  *See e.g., Robinson v. Whitley*, 2 F.3d 562, 571 (5th Cir. 1993) (no prejudice from loss of two alibi witnesses and physical evidence where defendant took no steps to preserve the testimony for trial and prosecution had discredited alibi at trial); *Cowart, supra* (absent witness would not have changed outcome of trial, and thus no prejudice).

The undersigned finds that petitioner has not demonstrated that the state court's resolution of his constitutional right to speedy trial under the Sixth Amendment and Due Process Clause of the U.S. Constitution was contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Young v. Dretke*, 356 F.3d 616, 624 (5th Cir. 2004).

## IV.    Sufficiency of the Evidence

Petitioner contends that the evidence was insufficient to convict him of murder and attempted murder because the witnesses gave different accounts of the crime and the perpetrator. The Louisiana Court of Appeal for the Second Circuit addressed this argument on direct appeal. *Mack, supra.*  The court reviewed the eyewitness testimony presented at trial and the alleged

---

[13]  The deceased witness was an employee of Grambling State University and presumably would have testified that defendant was on campus around the time of the crimes.  *Id*.  The court observed that another witness testified at trial to the same thing, and due to the crime scene's proximity to campus, any number of witnesses could have testified to the same thing without excluding the possibility that defendant committed the crimes before going to campus.  *Id*. Indeed, there was trial testimony that the campus was only five minutes away from the crime scene.  (R. 1089).  The court further emphasized that the state's case was also adversely affected by the passage of time.  *Id*.

14

inconsistencies in their accounts.  *Id.*   It summed up as follows,

> [d]uring the three day trial, the state presented, and the defense was unable to shake, the witnesses' statements that they saw and could positively identify defendant as the gunman. Each person who testified that they saw defendant with the assault rifle also testified that defendant was partially bald and was wearing camouflage-colored clothing. The three witnesses who were in the back bedroom testified consistently as to where they and the victim were located and what they were doing prior to the shooting. Furthermore, all adults present in the trailer during the shooting testified consistently regarding the occupants of the trailer and what they were doing at the time of the shooting.

> Likewise, the circumstantial evidence supports the guilty verdicts in this case. . . . Only moments after the shooting, the pawn shop owner called in to report that defendant, dressed as described by the witnesses and in the same color and make vehicle as broadcast on the radio, had just been in his store buying more ammunition. The witness also stated that he recognized defendant because he had bought a box of similar ammunition just the day before the shooting.

> Having reviewed the evidence in the light most favorable to upholding the jury's verdict, we are unable to determine that the testimony of the witnesses is contradictory regarding the major elements of the crimes of conviction or that the physical evidence presented any contradictions vis-a-vis the testimony. This assignment of error is without merit.

*Mack*, 850 So.2d at 1044.

A reviewing court will not disturb a state court jury verdict so long as the evidence, viewed in the light most favorable to the verdict, is sufficient to allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.  *Young v. Guste*, 849 F.2d 970, 972 (5th Cir.1988); *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781(1979).  It is the jury's responsibility  "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. Thus, the federal *habeas* court does not "focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853  (1993).  In so doing, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez*

15

*v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005) (quoted source omitted).  The reviewing court may

not substitute its interpretation of the evidence for that of the fact finder.  *Alexander v. McCotter*,

775 F.2d 595, 598 (5th Cir.1985).  In the end, habeas relief on a claim of insufficient evidence is

appropriate only when no rational trier of fact could have found petitioner guilty beyond a

reasonable doubt based on the evidence adduced at trial.  *West v. Johnson*, 92 F.3d 1385 (5th Cir.

1996).

The Louisiana Second Circuit Court of Appeal concluded that there was sufficient

evidence to prove petitioner's guilt under Louisiana law, finding that a rational fact finder,

viewing the evidence in the light most favorable to the prosecution, could have found beyond a

reasonable doubt that the defendant committed murder and attempted murder.  *Mack, supra*.

Petitioner has not shown, nor can he show, that this finding was unreasonable.  He continues only

to suggest that the witnesses who testified against him were not credible, an issue inappropriate

for a sufficiency of the evidence review.  Accordingly, Mack's sufficiency of the evidence claim

lacks merit.

### V.    Improper Remarks to the Jury

Petitioner argues that the district attorney improperly referred to him by his Muslim name

in an effort to taint the jury only a "few months after 9/11."  Petitioner argues that no one knew

him by his Muslim name, and that it had nothing to do with the evidence.  The court of appeal

considered petitioner's argument on direct appeal principally in the context of a hearsay objection

lodged by defense counsel when witnesses referred to defendant by his Muslim name, Malek

Shabazz.  *Mack, supra*.  However, petitioner did not argue before the state court, or this court,

that the use of his Muslim name during trial violated the U.S. Constitution or any federal laws or

16

treaties.  Accordingly, the argument is not properly before this habeas court.  *See, Stewart v. Martinez-Villareal*, 523 U.S. 637, 652, n3, 118 S.Ct. 1618, 1625 (1998).

The second circuit also briefly remarked upon the prosecution's reference to petitioner's Muslim name during closing argument.  *Mack, supra*.  To the extent that this portion of the claim is cognizable here, the undersigned observes that "[i]mproper jury argument by the prosecution does not present a claim of constitutional magnitude which is cognizable in a proceeding under 28 U.S.C. § 2254 unless such argument is so prejudicial that the appellant's state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment."  *Whittington v. Estelle*, 704 F.2d 1418, 1421 -1423 (5th Cir. 1983) (citations omitted).  Moreover, "a prosecutor is permitted to state in closing argument what he believes has been established by the evidence and to comment fairly on it."  *Id*.

In the instant case, the prosecutor had a very good reason for identifying defendant by his Muslim name during trial – one of the witnesses, Jerry Maiden, knew him *only* by his Muslim name.  (R. 1340-1341).  Further, petitioner's argument necessarily implies that 9/11 had so prejudiced the jurors that they were biased against all Muslims regardless of their race, national origin, allegiance, or non-involvement in the attacks.  By the time of the May 2002 trial, some eight months had passed since 9/11, and the undersigned simply cannot ascribe such irrational prejudice to the jurors.  Petitioner has not demonstrated that the prosecution's reference to his Muslim name was so prejudicial as to render his trial fundamentally unfair.  *Whittington, supra*.

## VI.    Ineffective Assistance of Counsel

Petitioner next argues that his trial counsel was ineffective because he failed to file a motion to suppress the eyewitness identification.  Petitioner stated that a motion to suppress

17

would have uncovered that one of the eyewitnesses, Tim Rhone, had seen petitioner's photograph in the newspaper prior to identifying him in a photo lineup. To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064 (1984).  The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 688.  The court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689-90.

*Strickland*'s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[14]  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) (citing *Strickland*, 104 S.Ct. at

---

[14]  The *Strickland* court outlined the extent of prejudice that must be established by the defendant:

> [a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment.  *Cf. United States v. Morrison*, 449 U.S. 361, 364-65 (1981).

> Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

> When a defendant challenges a conviction, the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*.

2068).  A petitioner must affirmatively prove prejudice.  *Deville v. Whitley*, 21 F.3d 654, 649 (5th Cir. 1994); *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062, 1066 (5th Cir. 1998).  Self-serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element."  *Sayre*, 238 F.3d at 635.  Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice.  *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance."  *Strickland*, 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland*, demonstrating both that counsel's performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson*, 160 F.3d 1029, 1035-36 (5th Cir. 1998).  "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green*, 160 F.3d at 1043.

An ineffective assistance of counsel claim presents a mixed question of law and fact, and thus the issue is reviewed under § 2254(d)(1).  *Ladd v. Cockrell*, 311 F.3d 349, 357 (5th Cir. 2002); *Martin, supra*.  Again, under 28 U.S.C. § 2254(d)(1), a federal court may not grant *habeas* relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

Petitioner raised the issue of ineffective assistance of counsel in his application for post-

19

conviction relief.  The court of appeal summarily dispensed with the argument because it had

previously considered the sufficiency of the eyewitness identification testimony in conjunction

with Mack's direct appeal.  *State of Louisiana v. Mack*, Docket Number 40938-KH (La. App. 2d

Cir. 12/8/2005); (R. 1721-1722); *Mack*, 850 So.2d at 1041, *et seq*.  In fact, the court remarked

that trial counsel "did an excellent job of pointing out a number of inconsistencies in the

eyewitness testimony."  *Mack*, 850 So.2d at 1043.  Moreover, even if trial counsel had

successfully suppressed Tim Rhone's identification of petitioner, that still would have left at least

two other witnesses who identified petitioner as the perpetrator.  *Id*.  In light of these other

witnesses, counsel conceivably exercised sound strategy in attempting to infect the other

witnesses with the less than independent identification by Rhone.  Petitioner certainly has not

established resulting prejudice.  Counsel effected the following exchange with Rhone at trial,

> Q.	And in fact, before you ever picked him out of the photographic
> lineup -- let me talk about this -- you had seen pictures of him.
> You had seen his name.  You had read in newspapers.  You knew
> who they had accused of all this before you ever picked him out,
> did you not?
>
> A.	I was staying in -- I had went back to Texas.  I didn't wait around to
> see none of that.  But I had seen a paper.  My mama sent -- she did,
> she sent me a paper.  You know what I'm saying?  She sent me a
> paper by my brother.  He had came home and she sent me a paper
> that she had and I had it.  I had got a paper, I think.
>
> Q.	So your mother sent you a picture of Michael Mack?
>
> A.	She sent me the paper, yeah.  His face was in the paper.
>
> Q.	But before you picked him out of any lineup, your mother had sent you a picture
> of him and you knew he was the one that was accused of all this, did you not?
>
> A.	Yeah.

(R.  1182).

20

It is well settled that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*  It is the petitioner who must overcome the presumption that defense counsel's performance fell within the broad range of reasonable professional assistance.  *Riley v. Cockrell*, 339 F.3d 308, 315 (5th Cir.2003).

Petitioner has not demonstrated that the state court's resolution of his ineffective assistance of counsel claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

## VII.    Counsel of Choice

In his final ground for habeas relief, petitioner contends that the trial court improperly denied his motion for a continuance and to substitute counsel that defendant filed on the morning of trial.  (R. 883-884).  Defendant alleged in his motion that retained counsel had continuously declined to file motions to suppress the identification and other evidence and had failed to communicate with defendant to prepare his defense.  *Id*.  Defendant stated that he waited until the morning of trial to file his motion because counsel continually promised that he would visit the defendant and file motions up until the day of trial.  *Id*.  In denying the motion, the trial judge

determined that the motion constituted a last minute effort to further delay the trial, and that the motion could have been filed much earlier. (R. 983-985). The judge further remarked that he was familiar with counsel's work over the years, and opined that he did an excellent job in his representation of criminal defendants. *Id*. Petitioner exhausted this argument in the state courts via his application for post-conviction relief. The court of appeal summarily rejected the argument on the grounds that it is was within a judge's wide discretion not to allow a defendant to be relieved of his counsel on the day of trial, and petitioner had not demonstrated resulting prejudice. *State of Louisiana v. Mack*, Docket Number 40938-KH (La. App. 2d Cir. 12/8/2005); (R. 1721-1722).

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend VI; United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665 (1981). Part of this guarantee is a criminal defendant's non-absolute right to retain the attorney of his choice. *U.S. v. Gharbi*, ___ F.3d ___, 2007 WL 4375207 (5th Cir. 12/17/2007) (citing *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55 (1932)). However, the right to counsel is not unqualified, even where counsel is retained. *U.S. v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980) (citation omitted). "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Gharbi, supra* (quoting, *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692 (1988)). Moreover, the freedom to select counsel of one's own choosing may not be used for purposes of delay, and last minute requests are disfavored. *Silva, supra* (citations omitted). "Denial of a continuance is within the discretion of the trial judge and will not be

22

reversed absent a clear abuse of discretion." *Id.*[15]

In *United States v. Torres-Perez*, the trial court denied defendant's motion for substitution of counsel and for continuance because defendant could have asked for new counsel earlier if he had perceived a problem with representation, and any delay would inconvenience the jurors who had been called to service. *United States v. Torres-Perez*, 110 Fed. Appx. 395 (5th Cir. 2004) (unpubl.).  In finding no abuse of discretion, the Fifth Circuit noted (much like here) that defendant had not identified any shortcomings with regard to counsel's representation at trial.  *Id.* Other courts have similarly found no abuse of discretion regarding the denial of last minute motions to substitute counsel.  *See, Dismukes v. Collins*, 3 F.3d 438 (5th Cir. 1993); *United States v. Norris*, 780 F.2d 1207 (5th Cir. 1986); *Smith v. Dretke*, 2005 WL 1473852 (N.D. Tex. 6/21/2005); *Braxton v. McDonough*, 2007 WL 1017675 (M.D. Fla. 3/30/2007).  Accordingly, petitioner has not established that the state courts' denial of his motion to substitute counsel was contrary to, or an unreasonable application of the Supreme Court's clearly established law in this area.  28 U.S.C. § 2254(d)(1).

## CONCLUSION

For the reasons stated above,

**IT IS RECOMMENDED** that Michael Mack's Petition for *Habeas Corpus* pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written

---

[15]  In *Silva*, the trial court denied defendant's oral motion for a continuance and to substitute counsel that was filed the day before trial.  *Silva, supra*.  The Fifth Circuit found no abuse of discretion.  *Id.*

objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 24th day of January 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE